IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DAVID A. SCHLEMM,

Plaintiffs,

v.

OPINION and ORDER

21-cv-744-wmc

KELLI WEST,

Defendant.

Representing himself, plaintiff David Schlemm was allowed to proceed on a First Amendment free exercise claim and a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") relating to his ability to use a pipe as part of a prayer ritual.[1] Schlemm, who follows Native American spiritual practices, contends that he should be permitted to possess a personal prayer pipe and be permitted to smoke tobacco daily as part of an individual prayer ritual. Now before the court is defendant's motion for summary judgment. (Dkt. #117.) For the reasons explained below, the motion will be granted. First, Schlemm's claims for injunctive relief were based on Covid-19 era restrictions on communal pipe use that are no longer in place, as DOC changed the policy in April 2022 to permit inmates identifying with the Native American/American Indian religious group to be allowed to possess personal ceremonial pipes for use during religious programming. Second, Schlemm currently possesses a personal pipe that he is permitted to use during congregate religious ceremonies. And third, to the extent that Schlemm is arguing that he should be allowed to smoke his personal pipe each day as a part of an

[1] The case originally included another plaintiff, William Weso, but his claims were dismissed because he failed to exhaust his administrative remedies before filing the lawsuit. (Dkt. #91.)

individual prayer ceremony that takes approximately one hour to complete, the DAI policies are the least restrictive means by which DAI could further several compelling government interests, including treating all religious groups in DOC equitably and maintaining critical security and safety interests.

UNDISPUTED FACTS[2]

**A. Background**

Plaintiff David Schlemm was housed at the Wisconsin Secure Program Facility (WSPF) from March 11, 2022 until January 3, 2024, when he was transferred to Jackson Correctional Institution (Jackson). In November 2025 he was transferred to Redgranite Correctional Institution where he is currently housed. Defendant Kelli Willard West has been the Religious Practices Coordinator and Chair of the Religious Practices Advisory

[2] Unless otherwise indicated, the following facts are drawn from defendant's proposed findings of fact, as well as the record, where appropriate. Notably, plaintiff did not file any proposed findings of fact or responses to defendant's proposed findings by his deadline for doing so. Specifically, after receiving multiple extensions of time to file his summary judgment opposition materials, plaintiff's response deadline was December 6, 2024. (Dkt. #133.) On December 16, 2024, the court received plaintiff's response brief along with 18 declarations, all postmarked December 10, 2024. (Dkt. ##134–152.) The declarations are copies of the same declaration signed by 18 individuals, providing little information beyond asserting that smoking a sacred pipe is an important aspect of Native American spirituality in both private and group prayers. On December 20, 2024, the court denied defendant's motion to dismiss the case due to plaintiff's untimely and incomplete summary judgment response but ordered that it would not accept any further summary judgment related submissions from plaintiff. (Dkt. #154.) On January 21, 2025, plaintiff filed a personal declaration in opposition to summary judgment, postmarked January 17, 2025 (dkt. #157), and on February 6, 2025, he filed a response to defendant's proposed findings of fact, postmarked February 3, 2025. (Dkt. #158.) The court will not consider these two filings because they were filed after the court ordered that it would not accept any further submissions from plaintiff. Moreover, even if the court were to consider these filings, they include no new evidence sufficient to create a genuine factual dispute, instead repeating essentially the same assertions plaintiff made in his previous filings.

Committee (RPAC) for the Department of Corrections Division of Adult Institutions (DAI) since August 30, 2010.

Schlemm was born into the Navajo tribe. As part of his Native American culture and spirituality, he regularly partakes in programming offered to DAI's Native American "umbrella religion group," including weekly pipe and drum services, sweat lodges and powwows. During the pipe and drum ceremonies, inmates congregate together to pray, drum and smoke a prayer pipe, which releases their prayers to the Creator. This process includes ceremonial cleansing of all attendees and items to be used, referred to as a smudge. This involves the burning of sacred herbs, usually a mixture of sage and cedar. Each person and item is cleansed by passing through the smoke. The pipe is then filled, lit, and passed around to each participant to take a turn at offering up their prayers by smoking the pipe.

Before the Covid-19 pandemic, all inmates attending the pipe and drum ceremony would get a chance to smoke the communal pipe, which is the prison's property. At that time, inmates were not allowed to possess personal pipes due to security concerns about inmates possessing smoking materials in their cells. Starting in mid-March 2020, DAI facilities instituted a range of precautions to address the pandemic, including restrictions on congregate religious ceremonies. Many congregate services were suspended for several months, including pipe and drum ceremonies. In December 2020, after receiving input from Native American spiritual leaders, the pipe and drum ceremonies were resumed with some modifications. Specifically, the ceremonies involved smaller groups of inmates and allowed only an assigned inmate "pipe carrier" to smoke the pipe, while all other participants remained masked; the designated pipe carrier would "collect prayers" by

touching the loaded pipe to each participant's shoulder and would then light and smoke the pipe on behalf of the group, releasing all the prayers at once, after which the stem of the communal pipe was disinfected at the end of each ceremony to prevent the spread of disease. Schlemm states that these policies violated his religious beliefs by keeping him from smoking the pipe himself. Because of these pandemic restrictions, many inmates in the Native American umbrella religion group, including Schlemm, submitted DOC-2075 "Request for New Religious Practice" forms requesting a personal prayer pipe. Schlemm submitted his request in November 2020.

In April 2022, the DOC modified its policies to allow inmates to purchase their own personal prayer pipes to use at pipe and drum ceremonies.[3] Schlemm obtained his own personal pipe on March 30, 2022. Inmate pipes are stored in the chaplain's office or chapel, depending on the institution, and can be used during congregate programming under the observation of the chaplain, designee or volunteer spiritual leader. The pipes may also be used on a limited basis for individual prayer for extenuating circumstances (*e.g.*, grieving the death of a loved one, or terminal illness).

Inmates are not permitted to keep or use their personal pipes in their cells due to safety and security reasons. Specifically, pipes could be used to hide and distribute contraband, including various drugs and small weapons; would be a fire hazard if stored and used in individual cells; and likely would cause disruption and tension among other

[3] DAI changed its policy regarding the ability to possess a personal pipe before defendant was aware of this lawsuit. Although plaintiff's lawsuit was filed on November 23, 2021, the lawsuits were not screened through until September 16, 2022. Defendant West was not aware of the lawsuit until after it was screened, and she was contacted by the Department of Justice. The policy was updated on April 1, 2022.

inmates who are not permitted to use and possess tobacco in otherwise tobacco-free institutions. On June 16, 2023, DAI policies were amended to return to pre-Covid-19 religious procedures. Since then, all inmates have been able to smoke a personal or communal pipe at pipe and drum ceremonies.

Schlemm has also submitted requests to defendant seeking permission to use the chapel every morning to smudge and smoke either his pipe or the communal pipe before the start of work, school, or programming. He estimates that he would need approximately one hour each day for his personal pipe ceremony and an additional 10 to 15 minutes before and after the ceremony to travel to and from the Chapel. Defendant denied his request for daily access to the chapel and his pipe because the chapel calendar is managed to provide equitable opportunities to each religious umbrella group for services and study groups. No religious group has daily religious programming because there is not sufficient time, space, staffing or volunteer resources to escort and supervise inmates in the chapel, and permitting one individual or religious group daily access to the chapel would suggest favoritism or preferential treatment. Additionally, to the extent Schlemm was requesting unstructured or unsupervised access to the chapel, defendant determined that such access would present security concerns, particularly in prisons that have limited and controlled inmate movement. Defendant recommended that Schlemm engage in adapted prayer and spiritual practices within his cell on the days he was not permitted to attend the chapel to smoke his pipe.

OPINION

Plaintiff contends that DOC's restrictions on his ability to use both a communal and personal prayer pipe impose substantial burdens on his ability to engage in Native American spiritual practices. Specifically, he contends that his spiritual beliefs require him to smoke the prayer pipe at the pipe and drum ceremony and during daily personal prayer. Thus, the court understands plaintiff to argue that his spiritual needs require both: (1) being allowed to smoke the pipe at each congregate pipe and drum ceremony without a designated pipe carrier; *and* (2) being provided with his own personal pipe to smoke on a daily basis in the prison chapel or other designated area. He brings claims under both the RLUIPA and the Free Exercise Clause of the First Amendment.

RLUIPA prohibits correctional facilities receiving federal funds from imposing a substantial burden on a prisoner's religious exercise unless the burden is the "least restrictive means" of furthering a "compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(1)–(2). To prevail on a First Amendment free exercise claim, a prisoner must show that (1) the defendants imposed a "substantial burden" on his religious exercise; and (2) the burden was not reasonably related to a legitimate penological interest. *Neely-Bey Tarik-El v. Conley*, 912 F.3d 989, 1003 (7th Cir. 2019); *Thompson v. Holm*, 809 F.3d 376, 379 (7th Cir. 2016). A substantial burden puts "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thompson*, 809 F.3d at 379.

The court will first address plaintiff's claims relating to congregate pipe and drum ceremonies, followed by his request for daily access to his personal prayer pipe.

### A. Pipe and Drum Ceremonies

Plaintiff contends that the Covid-19 era restrictions restricting prayer pipe access to a designated pipe carrier who prayed on behalf of a group violated his sincere spiritual beliefs. However, his claim fails under both RLUIPA and the Free Exercise Cause for two reasons.

First, to the extent plaintiff is seeking injunctive relief, the Covid-19 era restrictions on group pipe and drum ceremonies have been lifted due to a change in DAI policy. Plaintiff now possesses a personal prayer pipe and he is allowed to use both his personal pipe or the communal pipe during the weekly pipe and drum ceremony. Nor is there any realistic risk of the Covid-19 restrictions being reimplemented. *See, e.g., DeGroot v. Wisconsin Dep't of Corr.*, No. 23-2464, 2024 WL 1631416, at *2 (7th Cir. Apr. 16, 2024) ("This case, seeking to enjoin a now-rescinded mandate that responded to a version of the pandemic that is no longer around, is therefore moot."); *Goetzen v. York*, No. 21-cv-694-wmc, 2024 WL 1619335, at *4 (W.D. Wis. Apr. 15, 2024) ("with Covid-19 under control, there is little risk of any detainee or inmate being denied in-person, congregate religious services"). Therefore, any claim for injunctive relief relating to congregate pipe and drum ceremonies is moot.

Second, to the extent plaintiff is seeking damages for his spiritual practice being substantially burdened by the DOC's policy barring multiple-prisoner use of the prayer pipe during the Covid-19 era, defendant would be entitled to qualified immunity. Under this doctrine, a plaintiff may not obtain damages for a constitutional violation against a public official unless the plaintiff shows that the official violated clearly established law.

*Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 725 (7th Cir. 2013). A clearly established right is one that is sufficiently clear such "that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). Law is "clearly established" only if it is found in Supreme Court precedent, controlling circuit authority, or "a consensus of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 617 (1999).

In this case, given the global pandemic, it was appropriate for officials to balance inmates' religious needs with safety concerns regarding the spread of the virus. *See e.g.*, *Mays v. Dart*, 974 F.3d 810, 820–21 (7th Cir. 2020) (decisions on managing spread of Covid-19 in correctional facilities entitled to deference); *Blake v. West*, No. 21-cv-493-jdp, 2025 WL 915791, at *9 (W.D. Wis. Mar. 26, 2025) (during pandemic, prison officials didn't violate Free Exercise Clause by restricting movement of inmates within prison and barring religious volunteers from entering prison). Shared smoking of the pipe presented obvious elevated infectious-spread concerns, and plaintiff does not cite any authority clearly establishing that defendants violated the First Amendment by failing to lift their Covid-19 restrictions on the pipe and drum ceremony before mid-2022. To the contrary, this court has rejected a similar claim brought by another inmate. *See Curtis v. Kroening-Skime*, No. 23-CV-699-JDP, 2025 WL 2419607, at *3 (W.D. Wis. Aug. 21, 2025) (during pandemic, prison officials did not violate clearly established law by restricting multiple-prisoner use of prayer pipe during pipe and drum ceremonies). Thus, defendant is entitled

to summary judgment on plaintiff's claim challenging the Covid-19 era restrictions on pipe and drum ceremonies.

**B. Daily Access to Personal Prayer Pipe**

This leaves plaintiff's claim that the state is violating his rights under RLUIPA and the First Amendment by prohibiting him from accessing his prayer pipe on a daily basis to pray and smoke in the chapel or other designated areas. The court will begin by considering this claim under RLUIPA claim, because RLUIPA provides greater protection for religious liberty than the First Amendment itself. *Holt v. Hobbs*, 574 U.S. 352, 357 (2015). If plaintiff's RLUIPA claim fails, his free exercise claim under the First Amendment necessarily fails, too. *Tanksley v. Litscher*, No. 15-cv-126-jdp, 2017 WL 3503377, at *3 (W.D. Wis. Aug. 15, 2017), aff'd, 723 F. App'x 370 (7th Cir. 2018).

In applying RLUIPA, plaintiff has the initial burden to show that he has a sincere religious belief and that his religious exercise was substantially burdened. *Holt*, 574 U.S. at 361–362; *Koger v. Bryan*, 523 F.3d 789, 797–98 (7th Cir. 2008). Here, defendant does not dispute plaintiff's sincere spiritual beliefs but does argue that plaintiff's religious exercise is not substantially burdened by having only weekly, as opposed to daily, access to his personal prayer pipe. Specifically, defendant argues that plaintiff has not submitted evidence showing that his spiritual beliefs require daily access to the chapel to use his prayer pipe.

The court need not resolve this question, however, because even assuming that plaintiff's spiritual beliefs are substantially burdened by having only weekly access to his prayer pipe, defendant has demonstrated that the restrictions are the least restrictive means

of furthering a compelling governmental interest. *See Cutter v. Wilkinson*, 544 U.S. 709, 712 (2005). Specifically, defendants persuasively argue that the restrictions are necessary to further the compelling government interests of (1) maintaining prison safety and security; (2) treating different inmates and religious groups equitably; and (3) managing limited resources.

There is no question that "prison security is a compelling state interest" in the RLUIPA analysis, *Cutter*, 544 U.S. at 725 n.13, though courts do not "grant unquestioning deference to the government's claim of a general security interest" in justifying a challenged policy. *Holt*, 574 U.S. at 364. Rather, "RLUIPA ... contemplates a more focused inquiry and requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law to the person — the particular claimant whose sincere exercise of religion is being substantially burdened." *Id.* (citations omitted). But defendant makes that showing here. Defendant submitted evidence identifying specific security and safety reasons for requiring access to smoking materials to be limited and supervised. For example, a pipe is a fire hazard, can conceal contraband, and can create hostility among inmates, increasing the possibility of bartering, trading, stealing and strong-arming to gain access to otherwise-prohibited tobacco products. *See Skenandore v. Endicott*, No. 05-C-0234, 2006 WL 2587545, at *13 (E.D. Wis. Sept. 6, 2006) ("Allowance of tobacco would also create jealousy and animosity among inmates, hostile environments, risk of threats and acts of violence, and a serious security threat to institutions for both staff and inmates.") In addition, permitting certain inmates access to a restricted, but highly desired, product (tobacco) on a daily basis would not only put a strain on the supply

of tobacco for the whole Native American Umbrella Religion Group, but likely would cause resentment among other inmates. *See Cutter,* 544 U.S. at 720 ("Properly applying RLUIPA, courts must take adequate account of the burdens a requested accommodation may impose on nonbeneficiaries ....") (citation omitted).

Plaintiff argues that some of the security concerns would be mitigated if the chaplain or security staff controlled and supervised his daily use of his prayer pipe, but this would only lead to additional challenges. According to plaintiff, smoking his pipe daily would take him approximately one hour each day, which means that either the chaplain or security staff, or both depending on plaintiff's security status, would be needed approximately seven hours each week to supervise plaintiff's individual chapel time. Not only would that impose a significant burden on security staff and facility operations, but it would give plaintiff significantly more time in the chapel than other inmates are permitted. *See Cutter*, 544 U.S. at 726 (When "inmate requests for religious accommodations become excessive, impose unjustified burdens on other institutionalized persons, or jeopardize the effective functioning of an institution, the facility [is] free to resist the imposition."); *see also Cryer v. Clark*, Civ. No. 09-10238, 2009 WL 6345768, at *5 (D. Mass. July 9, 2009) (in response to inmate request for daily pipe and drum ceremony, prison raised legitimate "safety concern for the volunteer who leads the ceremony, and to the strain on staffing that a daily two-hour ceremony would entail, inasmuch as a staff member is required to supervise access to such things as the lighter used to light the ceremonial pipe."); *Skenandore,* 2006 WL 2587545, * 13 (inmate's rights

under RLUIPA not impinged by denying inmate's request to participate in weekly pipe ceremony where prison cited limited resources to oversee ceremony).

In sum, defendant has shown that DAI's current policy of limiting inmate access to prayer pipes to a weekly, supervised pipe and drum ceremony is directly linked to several compelling government interests. Nor has plaintiff submitted contrary evidence undermining defendant's showing that allowing weekly supervised use of tobacco represents the least restrictive method of ensuring institution safety, security and equity. Therefore, defendant is entitled to summary judgment on plaintiff's RLUIPA claim. As discussed above, because plaintiff's RLUIPA claim fails, his Free Exercise claim necessarily fails as well.

ORDER

IT IS ORDERED that:

1. Defendant Kelli West's motion for summary judgment (dkt. #117) is GRANTED.
2. The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 18th day of September, 2026.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge